UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

MICHAEL VERELINE, BLUE SKY )
BUILDERS, INC., )
)
    Plaintiffs, )
)
v. ) Case No. 5:15-cv-00176
)
WOODSVILLE GUARANTY SAVINGS )
BANK, )
)
    Defendant. )

**OPINION AND ORDER**
(Doc. 4)

    In this lender-liability case, Plaintiffs Blue Sky Builders, Inc. ("Blue Sky") and its President Michael Vereline sue Defendant Woodsville Guaranty Savings Bank ("Woodsville") claiming: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) tortious interference with business relations; and (4) equitable estoppel. (*See* Doc. 1.) For relief, Plaintiffs seek a declaration that Woodsville is not entitled to foreclose on property owned by Blue Sky, and "such other relief as this court deems necessary and just." (*Id.* at 7.)

    Woodsville has filed a Motion to Dismiss or Stay the Complaint under Fed. R. Civ. P. 12(b)(1) and (3), asserting that: (1) the Complaint fails to allege grounds for Federal jurisdiction; (2) the Complaint violates the Anti-Injunction Act, 28 U.S.C. § 2283, to the extent that it seeks to enjoin a state-court foreclosure; and (3) the court should abstain from exercising subject-matter jurisdiction under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), because the Complaint in this case is identical to claims asserted by Plaintiffs in a compulsory counterclaim in the state-court foreclosure action. (Doc. 4 at 1.) Plaintiffs oppose Woodsville's Motion to Dismiss. (Doc. 5.) Woodsville filed a Reply on November 5, 2015. (Doc. 6.) The court heard argument on the Motion on November 30, 2015. For the reasons discussed below, Woodsville's Motion to Dismiss or Stay (Doc. 4) is GRANTED IN PART and DENIED IN PART.

## Background

Plaintiffs' claims against Woodsville arise out of a commercial lending relationship between the parties. According to the Complaint, since the mid-1990s, Woodsville has provided financing for a lakeside Vermont condominium development owned by Blue Sky. Changes to Vermont's shoreline setback statutes required Blue Sky to submit certain permit applications by July 1, 2014 to protect the value of the development. Blue Sky could not afford to prepare the applications while also servicing the debt to Woodsville. Blue Sky failed to make payments to Woodsville, and Woodsville accelerated the loan balance. Woodsville subsequently declined to advance funds to pay property taxes and prevented two sales of cabins at the development. According to Plaintiffs, Woodsville's actions left the condominium project "fractured." (Doc. 1 at 4, ¶ 45.)

Woodsville filed a mortgage foreclosure action against Blue Sky and Vereline on May 6, 2015 in Vermont Superior Court. (*See* Docs. 4-1; 4-4.) On July 29, 2015, Blue Sky and Vereline filed their Complaint in this court. (Doc. 1.) On August 14, 2015, Blue Sky and Vereline filed a Verified Answer and Counterclaim in the foreclosure case. (*See* Docs. 4-3; 4-4.) The counterclaims against Woodsville are virtually identical to Plaintiffs' claims in this case. On October 22, 2015, the parties in the foreclosure case stipulated to a discovery and alternative dispute resolution (ADR) schedule. (Doc. 6-1.) That schedule calls for ADR to be completed by April 15, 2016, sets a motions deadline for May 1, 2016, and a trial-ready date of June 1, 2016.

## Analysis

### I.  Rule 12(b)(1) Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court 'lacks the statutory or constitutional power to adjudicate it.'" *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "'A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *Id.* (quoting *Makarova*, 201 F.3d at 113). The issue of subject-matter jurisdiction may be raised at any time. *McCain v. United States*, No. 2:14-cv-92, 2015 WL 1221257, at *19 (D. Vt. Mar. 17, 2015); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Under Rule 12(b)(1), the court is "permitted to rely on non-

conclusory, non-hearsay statements outside the pleadings." *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013).

A motion to dismiss based on the abstention doctrine may be analyzed under Rule 12(b)(1). *See Stahl York Ave. Co., LLC v. City of New York*, No. 14 Civ. 7665(ER), 2015 WL 2445071, at *7 (S.D.N.Y. May 21, 2015) ("A motion to dismiss based on *Colorado River* is considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure."), *appeal docketed* No. 15-2000 (2d Cir. 2015); *City of New York v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 341 (E.D.N.Y. 2008) ("A motion to dismiss based on the abstention doctrine is also considered as a motion made pursuant to Rule 12(b)(1)."); 5B Charles Alan Wright et al., *Federal Practice & Procedure* § 1350 (3d ed.) ("Courts have recognized a variety of other defenses that one normally would not think of as raising subject-matter jurisdiction questions when considering a Rule 12(b)(1) motion, such as claims that . . . the subject matter is one over which the federal court should abstain from exercising jurisdiction.").[1]

## II.     Diversity Jurisdiction

Woodsville contends that the Complaint should be dismissed because it fails to allege facts establishing federal diversity jurisdiction under 28 U.S.C. § 1332(a). (Doc. 4 at 3.) Section 1332(a) provides, in pertinent part, that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." Woodsville does not dispute that it is a citizen of New Hampshire and Plaintiffs are citizens of Vermont, but Woodsville maintains that Plaintiffs' sole jurisdictional allegation is the conclusory assertion that jurisdiction is proper under § 1332(a). (*See* Doc. 1 at 1, ¶ 6.) Woodsville argues that this bare statement is insufficient to establish diversity jurisdiction. Plaintiffs respond that there is a rebuttable presumption that the face of the Complaint is a good-faith representation of the

---

[1] Not all courts agree that Rule 12(b)(1) is the proper vehicle for raising an abstention claim. *E.g.*, *Kilroy v. Mayhew*, 841 F. Supp. 2d 414, 416 (D. Me. 2012) ("This Court has previously noted that 'abstention is a prudential rather than a jurisdictional ground for dismissal,' and, therefore, when considering abstention it does 'not rely upon the pleading or burden requirements of either Rule 12(b)(1) or Rule 12(b)(6).'" (quoting *Christian Action Network v. Maine*, 679 F. Supp. 2d 140, 143 n.2 (D. Me. 2010))).

amount in controversy, and that since § 1332(a) includes the $75,000 amount-in-controversy requirement, Plaintiffs' citation to that provision is sufficient. (Doc. 5 at 3; 5 n.1.)

Courts recognize "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer v. Equitable Life Assurance Soc'y of the United States*, 347 F.3d 394, 397 (2d Cir. 2003) (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)). "To overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." *Id.* (quoting *Wolde-Meskel*, 166 F.3d at 63). "[I]n actions for declaratory or injunctive relief, which . . . are equitable in nature, the amount in controversy is measured by the value of the object of the litigation." *DiTolla v. Doral Dental IPA of New York, LLC*, 469 F.3d 271, 276 (2d Cir. 2006) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)).

Here, the Complaint does not include any explicit statement that the amount in controversy exceeds $75,000; in fact the Complaint does not include any explicit demand for a sum certain in damages or restitution. But the Complaint does cite § 1332(a) as the basis of jurisdiction, and asserts by implication that the amount in controversy exceeds $75,000. *See Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC*, 620 F.3d 926, 932 (8th Cir. 2010) (invoking diversity jurisdiction under § 1332 implicitly alleged claims exceeding $75,000). Woodsville has not shown that the value of the object of the litigation is less than $75,000. Woodsville also has not shown that the damages resulting from the alleged "fracturing" of the condominium project are less than that sum.

At oral argument, counsel represented that the amount of the accelerated debt exceeds $900,000 and that the two proposed sales of collateral (two cabins) substantially exceeded $75,000. No evidence was offered to demonstrate that the amount in controversy was less than $75,000. On the current record, the court is satisfied that the jurisdictional requirement is met.

### III.   *Colorado River* Abstention

Woodsville asserts that Plaintiffs' equitable claims should be dismissed on abstention grounds under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and that Plaintiffs' legal claims should be stayed on the basis of the same abstention principles. (Doc. 4 at 9.) Plaintiffs contend that the *Colorado River* abstention factors weigh in favor of retaining jurisdiction. (Doc. 5 at 8.)

When a federal court properly has subject matter jurisdiction over a case, "it has a 'virtually unflagging obligation' to exercise that jurisdiction, even if an action concerning the same matter is pending in state court." *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 (2d Cir. 1986) (quoting *Colorado River*, 424 U.S. at 817–18). The Supreme Court's decision in *Colorado River* supplies one of the limited exceptions; in that case, "the Supreme Court held that, in addition to the earlier-established categories of abstention, in certain other exceptional circumstances, a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in comprehensive disposition of litigation and abstention would conserve judicial resources." *Niagara Mohawk Power Corp. v. Hudson River–Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (footnote, citations, and internal quotation marks omitted). "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Id.* (quoting *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)); *Ben & Jerry's Homemade, Inc. v. La Soul, Inc.*, 983 F. Supp. 499, 501 (D. Vt. 1997) (threshold question is whether actions are "concurrent," involving essentially the same parties and claims).

"In evaluating whether *Colorado River* abstention is appropriate, federal district courts are to consider six factors, 'with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Niagara Mohawk*, 673 F.3d at 100. Those six factors are:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Id.* at 100–01 (quoting *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001)). "No single factor is necessarily decisive, . . . and the 'weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case.'" *Vill. of Westfield, N.Y. v. Welch's*, 170 F.3d 116, 121 (2d Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

The court begins with the prerequisite that the concurrent proceedings be "parallel." On that issue, considerations include whether the actions involve the same parties, subject matter, and relief requested. *Brookdale Senior Living Cmtys., Inc. v. Margrey*, No. 5:15-cv-

5

00834(MAD), 2015 WL 6394535, at *4 (N.D.N.Y. Oct. 21, 2015) (citing *Hous. Works, Inc. v. City of New York*, 72 F. Supp. 2d 402, 417 (S.D.N.Y. 1999)). "Complete identity of parties and claims is not required; the parallel litigation requirement is satisfied when the main issue in the case is the subject of already pending litigation." *Id.* (quoting *GBA Contracting Corp. v. Fid. & Deposit Co. of Md.*, No. 00 Civ. 1333 SHS, 2001 WL 11060, at *1 (S.D.N.Y. Jan. 4, 2001)). Here, Vereline and Blue Sky are counterclaim plaintiffs in the foreclosure action brought against them by Woodsville in Vermont Superior Court. (Doc. 4-3.) The parties are the same, and the counterclaims and relief sought in the foreclosure action are identical to Plaintiffs' claims and requests for relief in this case. It is therefore appropriate to turn to the six *Colorado River* factors.

### A.   Assumption of Jurisdiction Over a Res or Property

The first factor is whether the controversy involves a property over which one of the courts has assumed jurisdiction. Woodsville asserts that the Vermont Superior Court obtained jurisdiction over the property involved in this dispute two months before the federal action was filed. (Doc. 4 at 8.) Plaintiffs maintain that the parties' rights to the property—Blue Sky's real estate—are not at issue in Blue Sky's damages claims in federal court. (Doc. 5 at 6.) According to Plaintiffs, Blue Sky's breach-of-contract, breach-of-implied-covenant, and tortious-interference claims are distinct from any property interest in the real estate subject to the mortgage. (*Id.*) Woodsville insists that the Vermont Superior Court has jurisdiction over the property that is the subject of the dispute between the parties, and that the Superior Court is best positioned to fashion a complete remedy. (Doc. 6 at 4.)

The state-court foreclosure action is an *in rem* proceeding. *See F.D.I.C. v. Four Star Holding Co.*, 178 F.3d 97, 102 (2d Cir. 1999) (foreclosure is an *in rem* proceeding). "The Supreme Court has recognized that 'in cases where a court has custody of property, that is, proceedings *in rem* or *quasi in rem* . . . the state or federal court having custody of such property has *exclusive jurisdiction* to proceed.'" *Id.* (omission and emphasis by the Second Circuit) (quoting *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964)). The Vermont Superior Court thus has exclusive jurisdiction over Blue Sky's property.

To grant Plaintiffs the declaratory relief they seek—a declaration that Woodsville is not entitled to foreclose on property—would interfere with the Vermont Superior Court's exclusive jurisdiction over that property. On that portion of Plaintiffs' federal claim, the first factor is

6

dispositive and requires abstention.[2] Plaintiffs made clear at the November 30, 2015 hearing, however, that their primary interest is to keep their *damages* claims in federal court.

Plaintiffs' damages claims are not an in rem or quasi in rem proceeding—at most the damages claims are indirectly related to Blue Sky's property. Resolution of those claims by a final judgment for money damages or a judgment for Woodsville will not interfere with the Vermont Superior Court's in rem jurisdiction and pending foreclosure action. *See United States v. Certified Indus., Inc.*, 361 F.2d 857, 860 (2d Cir. 1966) ("[T]he mere fact that certain property in possession of custody of the state court is indirectly related to the action in the federal court is not a bar to the exercise of federal jurisdiction 'where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.'" (quoting *Markham v. Allen*, 326 U.S. 490, 494 (1946))); *Burdick v. Bank of Am., N.A.*, 99 F. Supp. 3d 1372, 1377 (S.D. Fla. 2015) (state court jurisdiction over secured property not meaningful where federal proceeding was not brought in rem); *Aktas v. JMC Dev. Co.*, No. 1:09-cv-1436 (GLS\DRH), 2010 WL 2520980, at *3 (N.D.N.Y. June 15, 2010) (pending state-court action to foreclose on mechanic's lien did not require *Colorado River* abstention since action in federal court was fundamentally in personam). The first factor therefore does not favor abstention on Plaintiffs' damages claims.

### B.     Inconvenience of the Federal Forum

The second factor is whether the federal forum is less inconvenient than the state court for the parties. Woodsville asserts that this factor is neutral. (Doc. 4 at 8.) Plaintiffs assert that it weighs against abstention since both courts are equally convenient. (Doc. 5 at 6.) Since the parties agree that the federal court is no less convenient than the state court, the second factor "favors retention of the case in federal court." *Vill. of Westfield*, 170 F.3d at 122.

### C.     Avoidance of Piecemeal Litigation

The third factor is whether staying or dismissing the federal action will avoid piecemeal litigation. Woodsville asserts that this factor favors abstention. (Doc. 4 at 8.) Plaintiffs contend that the third factor "is implicated virtually every time there are parallel state and federal proceedings" and that it is insufficient by itself to support abstention. (Doc. 5 at 6.) Woodsville

---

[2] This conclusion makes it unnecessary to address Woodsville's alternative argument based on the Anti-Injunction Act.

replies that that avoidance of piecemeal adjudication is the most important factor, and that it strongly favors abstention. (Doc. 6 at 2–4.)

As the Second Circuit has stated, "the primary context in which we have affirmed *Colorado River* abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." *Woodford*, 239 F.3d at 524. "The classic example arises where all of the potentially liable defendants are parties in one lawsuit, but in the other lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are not parties." *Id.* Here, the parties are the same in both cases. The principles of res judicata and collateral estoppel will therefore operate to mitigate the risk of any potentially inconsistent outcome. Moreover, any such risk would not be enough to overcome the strong presumption in favor of the court exercising its jurisdiction. *See Burrell v. State Farm Fire & Cas. Co.*, No. 00 CIV. 5733(JGK), 2001 WL 797461, at *6 (S.D.N.Y. July 12, 2001) (third factor favored abstention because of "some potential for inconsistent results," but risk of conflicting results was not sufficient to overcome presumption that federal court should exercise its jurisdiction).

Courts in other cases have declined to abstain from adjudicating claims for damages despite the pendency of a related foreclosure proceeding. In *Burdick*, the court retained jurisdiction to adjudicate a plaintiff's claim for alleged bad acts committed by defendants while servicing his residential mortgage, despite the pendency of a state-court foreclosure proceeding. The court explicitly found that the case presented "no danger of piecemeal litigation beyond the 'unremarkable repetition of efforts and possibly some piece-by-piece decision-making.'" 99 F. Supp. 3d at 1377 (quoting *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1300, 1307 (S.D. Fla. 2014)).

In *Bank of New York v. Bin Saud*, 628 F. Supp. 474 (S.D.N.Y. 1986), the bank lent money for construction of a Florida apartment building, secured with an interest in the property and also by a personal guarantee from Mishal Bin Saud. Even though the bank had commenced a foreclosure proceeding in Florida state court, the federal court concluded there was no reason to abstain from adjudicating the bank's claim against Bin Saud based on his personal guarantee. The court reasoned that "while there exists an identical issue within each action, *i.e.*, whether an event of default on the Financing Documents has occurred, the two actions are largely disparate

since one involves merely a guarantee of payment under New York law and the other involves real estate foreclosure under Florida law . . . ." *Id.* at 476.

Woodsville cites several cases where courts concluded that abstention was appropriate in the context of parallel state-court foreclosure proceedings. Each of those cases is distinguishable. In *CCB, LLC v. BankTrust*, 438 F. App'x 833 (11th Cir. 2011) (per curiam), the Eleventh Circuit held that the district court did not abuse its discretion in staying a federal action brought by a defaulted mortgagor against its lender. But it appears that the relief the plaintiffs sought in the federal case was limited to rescission of the loan and mortgage, and did not include a claim for damages. *CCB, LLC v. BankTrust*, Case No. 3:10-cv-228/LAC/EMT (N.D. Fla. Jan. 3, 2011), ECF No. 80. Thus the district court found that the first *Colorado River* factor in that case favored abstention. Moreover, the state case was nearly a year older than the federal case. *See id.*

In *Value Manufactured Homes, LLC v. Key Bank, N.A.*, the plaintiffs brought a federal diversity suit against a lender on a variety of theories after a Michigan state court granted foreclosure to the lender and appointed a receiver. 919 F. Supp. 2d 303, 305 (W.D.N.Y. 2013). The plaintiffs in the federal action were the defendants in the state-court action. In a January 2013 decision the federal court concluded that *Colorado River* abstention applied, reasoning in part that "abstention here would help avoid piecemeal litigation, particularly inasmuch as the Michigan State Court action has advanced further than the instant case, and is scheduled for trial . . . ." *Id.* at 309. Notably, the federal court found that the federal suit was "unmistakably designed to challenge all that has occurred or is pending in the Michigan State Court action." *Id.* at 306. Thus *Value Manufactured Homes* appears to have been driven largely by the fact that there had already been extensive proceedings in state court. The same is true of *Carson v. Wells Fargo Bank, N.A.*, No. 8:10-CV-2362-T17-EAJ, 2011 WL 2470099 (M.D. Fla. June 20, 2011), where the lender had filed a state-court foreclosure action more than two years before the borrowers filed their federal action. As discussed below, this case is different.

*Healy v. Fifth Third Mortg. Co.* is distinguishable because in that case the court explicitly found that "both the federal action and the state action involve the resolution of Fifth Third's right to proceed with foreclosure." No. 5:10-CV-348-KSF, 2011 WL 577385, at *4 (E.D. Ky. Feb. 9, 2011). In contrast, adjudicating Plaintiffs' damages claims in this case will not prevent Woodsville from proceeding with foreclosure in the Vermont Superior Court. In short, the cases

9

that Woodsville cites stand only for the proposition that, where there are parallel state-court foreclosure proceedings, *Colorado River* abstention *may* be appropriate depending on the circumstances. For the reasons discussed here, the circumstances in this case are not so exceptional that *Colorado River* abstention is appropriate.

### D. Order in which Jurisdiction was Obtained

The fourth factor is an inquiry into the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other. Woodsville notes that the Vermont Superior Court obtained jurisdiction two months before the federal action was filed, and asserts that the state case is "significantly more advanced." (Doc. 4 at 8.) Plaintiffs contend that the fourth factor weighs against abstention, arguing that Blue Sky first sought affirmative relief and damages through its Complaint in the federal action. (Doc. 5 at 7.) Plaintiffs also assert that, at the time the federal action was filed, no discovery responses had been produced and no depositions had been taken. (*Id.*)

Strictly speaking, the state-court foreclosure action was filed before the federal case. Notably, however, Plaintiffs filed their Complaint in the federal case before they filed their counterclaims in the state-court foreclosure case. In any case, the precise order of operations is less important because the fourth factor "does not turn exclusively on the sequences in which the cases were filed, 'but rather in terms of how much progress has been made in the two actions.'" *Vill. of Westfield*, 170 F.3d at 122 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21). Here, the state-court action is not materially more advanced than the federal case. It is true that, in the foreclosure case, a discovery schedule has recently been set and some discovery has commenced. But the Vermont Superior Court has not yet been asked to rule on any issue going to the merits; no summary judgment motion has been filed in that court. Both cases are still in the early stages of litigation. The court therefore concludes that the fourth factor favors retaining jurisdiction.

### E. Whether State or Federal Law Supplies the Rule of Decision

The fifth factor is whether federal law provides the rule of decision. Woodsville argues that this factor favors abstention because there is no federal law at issue. (Doc. 4 at 9.) Plaintiffs assert that the presence of state-law issues does not ordinarily weigh in favor of surrendering jurisdiction. (Doc. 5 at 7.) The court agrees with Plaintiffs on this point; "the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly

complex." *Vill. of Westfield*, 170 F.3d at 124. The court therefore concludes that the fifth factor only weakly favors abstention.

### F. Adequacy of State Procedures to Protect Federal Rights

The sixth factor examines whether the state procedures are adequate to protect Plaintiffs' federal rights. Woodsville argues that, since no federal law is at issue, there is no concern about protecting any of Plaintiffs' federal rights in the state-court action. (Doc. 4 at 9.) Plaintiffs assume that the Vermont Superior Court "may be adequate to resolve the parties' dispute," but assert that the sixth factor is only significant if it weighs in favor of federal jurisdiction. (Doc. 5 at 7.) Plaintiffs are correct that the sixth factor "'is significant only if it militates in favor of federal jurisdiction.'" *Ben & Jerry's Homemade*, 983 F. Supp. at 502 (quoting *Zemsky v. City of New York*, 821 F.2d 148, 152 (2d Cir. 1987)). The court therefore concludes that the sixth factor is not significant in this case.

On balance, the six *Colorado River* factors do not favor abstention with respect to Plaintiffs' claims for damages. The fifth and sixth factors only weakly favor abstention, and all of the remaining factors weigh in favor of retaining jurisdiction over the damages claims. Coupled with the strong presumption against abstention, the court concludes that it should exercise its jurisdiction to adjudicate Plaintiffs' damages claims.

### Conclusion

For the above reasons, Woodsville's Motion to Dismiss or Stay (Doc. 4) is GRANTED IN PART and DENIED IN PART. The portion of Plaintiffs' claim seeking a declaration that Woodsville is not entitled to foreclose on property owned by Blue Sky is dismissed under *Colorado River* as incompatible with the Vermont Superior Court's exclusive in rem jurisdiction. Plaintiffs' claims for damages remain in this case.

Dated at Rutland, in the District of Vermont, this 16 day of December, 2015.

Geoffrey W. Crawford, Judge
United States District Court